# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with a certain cellular telephone assigned call number **414-766-8782**

) ) ) ) ) ) )

Case No. 20-894M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. §§ 2113(a) and (d), 924(c), and (2)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Mary Davidson
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: January 31, 2020

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin     Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mary Davidson, being first duly sworn on oath, on information and belief state:

### I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **414-766-8782** ("the SUBJECT PHONE") that is stored at premises controlled by T-Mobile (d/b/a Metro PCS), a wireless telephone service provider headquartered at 4 Sylvan Way, in Parsippany, New Jersey, 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May 2019. Since October 2019, I have been assigned to FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, interviews, and debriefs of arrested subjects. As a result of this

training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. I have conducted and/or assisted with investigations of violent crime violations in conjunction with agents and officers from other jurisdictions and have received training from these agents and officers in conducting these investigations. I have also conducted and/or assisted with investigations that have led to the arrest of persons for violations of law dealing with bank robberies and commercial robberies.

4. Based on the facts set forth in this affidavit, there is probable cause that Edward Beard and others were involved in the armed bank robbery at Prime Financial Credit Union, 1923 West Oklahoma Avenue, in Milwaukee, Wisconsin on September 13, 2019, in violation of Title 18, United States Code, Sections 2113(a) and (d), 924(c), and 2. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

5. This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, surveillance videos, physical surveillance, and witness statements that I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

6. Because this affidavit is submitted for the limited purpose of a obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.

2

## II. PROBABLE CAUSE

7. On September 13, 2019, two male subjects committed an armed robbery of Prime Financial Credit Union, a federally insured financial institution located at 1923 West Oklahoma Avenue, in Milwaukee, Wisconsin. The subjects entered the bank at approximately 11:19 a.m. Subject #1 brandished two semi-automatic handguns, one in each hand, and ordered customers and employees to the floor. Subject #2 climbed over the teller counter and obtained cash from three teller drawers. The subjects then exited the bank with approximately $16,112 in U.S. currency.

8. Subject #1 was described as a black male with a slender build. The subject was wearing a dark knit hat, dark sunglasses, white mask, dark navy jacket, white latex gloves, grey sweatpants, and grey Vans shoes. Subject #1 brandished an all-black semi-automatic handgun and a silver-over-black semi-automatic handgun.

9. Subject #2 was described as a black male with a heavy build. The subject was wearing a red True Religion "puffer"-style winter coat with the hood up and horseshoe logo on the left breast, white mask, dark pants, black shoes, and blue latex gloves.

10. The bank surveillance footage captured the activity described above. In addition, the footage shows a black Chevrolet Trailblazer travel through the alley adjacent to the credit union in a northbound direction. The Trailblazer backed into a parking space along the alley. Both subjects emerged from the area where the car parked and walked to the credit union.

11. Investigators obtained nearby surveillance footage from 3130 South 20th Street, an apartment building next to the Prime Financial Credit Union. The video shows the alley adjacent to the credit union. In the minutes prior to the robbery, the video showed a black Chevrolet

3

Trailblazer (hereinafter "Trailblazer") traveling northbound in the alley from Euclid Avenue, headed in the direction of the bank. The Trailblazer had a luggage rack and no front plate.

12. Investigators obtained video from Milwaukee County Transit System (MCTS) buses traveling in the 3100 block of South 20th Street and 1900 block of West Oklahoma Avenue just before and during the robbery. The footage shows the same Trailblazer, with a luggage rack and all other distinct features, going south past the bank at least twice, essentially looping around the credit union prior to the robbery. During one such loop, the Trailblazer was seen traveling with a tan Chevrolet Malibu (hereinafter "Malibu") and light blue or green Toyota Prius (hereinafter "Prius") prior to the robbery. The group of vehicles passed the bank from multiple directions and were seen traveling together on multiple surveillance cameras. Based upon my training and experience, the occupants of the three vehicles were casing the credit union prior to the robbery.

13. At 11:08 a.m., the vehicles are observed on video from MCTS bus number 5175. The Malibu is observed with Wisconsin vehicle registration plate AGB3884 affixed to the front and rear of the vehicle. The Prius is observed with Illinois vehicle registration plate X291694 affixed to the front and rear of the vehicle. The Trailblazer is observed with Wisconsin vehicle registration plate AFF1865 affixed to the rear of the vehicle. At the time the Prius passed bus number 5175, the driver of the vehicle is wearing a red puffer-style jacket, consistent with the jacket worn by Subject #2 in the robbery.

14. In the minutes prior to the robbery, the bank surveillance video captured the Trailblazer (headed south) crossing the intersection of South 20th Street and West Oklahoma avenue after bus number 5188 crosses the intersection. A vehicle traveling in front of the Trailblazer, and similar in appearance to the Malibu, turned left onto West Oklahoma Avenue (headed east). At 11:17 a.m., the Trailblazer is observed on video from bus number 5188, but

4

there was no longer a license plate affixed to the rear of the vehicle. At that time, the Trailblazer was again headed in a southbound direction and made a left turn (headed east) onto Euclid Avenue. The Trailblazer then turned left (northbound) into the alley that runs adjacent to the bank. At the time the Trailblazer passed bus number 5188, the front passenger window was partially down, and the footage shows a black male passenger sitting in the front passenger seat. Based on my training and experience, the driver of the Malibu was conducting surveillance of the Credit Union during the robbery.

15. Illinois vehicle registration X291694 listed to a green 2014 Toyota Prius. The Prius was reported stolen from 603 Vel R. Phillips Avenue, in Milwaukee, on September 13, 2019, at approximately 8:25 a.m. The Prius was recovered on September 25, 2019.

16. Wisconsin vehicle registration plate AGB3884 listed to a brown 2020 Chevrolet Malibu. The registered owner of the vehicle was EAN Holdings, LLC, doing business as Enterprise Rent-a-Car. Records obtained from Enterprise Rent-a-Car show that Albert Conley (XX/XX/1967) rented the Prius at 10:11 p.m. on September 12, 2019. The Prius was returned to Enterprise on September 13, 2019 prior to 10:00 p.m. The Prius was rented from and returned to the Enterprise Rent-a-Car location at the Milwaukee Airport. Conley provided cellular telephone number 816-605-0619 and landline telephone 816-229-0976 when he rented the vehicle.

17. Wisconsin vehicle registration plate AFF1865 listed to a black 2007 Chevrolet Trailblazer. The registered owner of the vehicle was Jeffrey Benson. Benson's cellular telephone is listed as 414-856-6621 with Wisconsin Department of Corrections, Probation and Parole. On September 25, 2019, investigators observed Benson driving the Trailblazer. While under surveillance, he drove the car to 4556 North 71st Street, Milwaukee, and entered the residence. Law enforcement officers observed Benson at that residence on several other occasions as well.

18. Investigators obtained a search warrant for the historical cellular tower location data associated with telephone number 414-856-6621, which was determined to be Jeffrey Benson's telephone number. On the date of the robbery, the telephone connected with towers that served an area near 4556 North 71st Street from 2:31 a.m. to 7:58 a.m. At 10:50 a.m., the telephone connected with a tower located at 1568 West Pierce Street, Milwaukee, WI, which is approximately 2.7 miles from the victim credit union. Prior to the robbery, at 11:09 a.m., the telephone connected with a tower that serves an area including the bank. The robbery occurred at approximately 11:19 a.m. After the robbery, at 11:25 a.m., the phone connected with a tower located approximately 1.5 miles from the bank at 3003 West Cleveland Avenue. At 11:47 a.m., the phone again connected with a tower serving the area of 4556 North 71st Street.

19. On October 13, 2019, Benson was observed driving the Trailblazer. Law enforcement officers followed Benson south to the border of Wisconsin and Illinois. Based upon information collected from a GPS tracking device, observations of law enforcement officers, and lease documents, Benson moved to Georgia. Edward Beard (XX/XX/1961) and other associates of Jeffrey Benson assisted him in loading his belongings into vehicles and driving to Georgia.

20. A federal grand jury returned a one-count indictment against Jeffrey Benson charging him with the Prime Financial Credit Union robbery on September 13, 2019, in *United States v. Benson*, Case No. 19-CR-243 (JPS). Benson was arrested pursuant to a federal arrest warrant on December 4, 2019, in Conyers, Georgia. Soon after Benson's arrest, law enforcement located the Trailblazer in Conyers, Georgia at Bama Boys Towing. Rockdale County Sheriff reports noted that the Trailblazer was discovered abandoned after crashing into a fence on October 23, 2019. On October 24, 2019, Benson signed the title to the Trailblazer over to Bama Boys Towing.

21. A search warrant was conducted on Benson's residence in Georgia, including forensic downloads of his cellular telephone, with telephone number 414-856-6621, and Virginia Jones cellular telephone, with telephone number 720-290-0895.

22. A review of Virginia Jones cellular telephone included a text conversation with a contact named, "Puna Simmons" on September 13, 2019. The conversation relates to Jones' need for a notary public. At 11:11 a.m., the conversation ends with Jones stating, "I will head over" and an affirmative response. An image of a notarized document is captured on Jones' cellular telephone at 11:57 a.m. on September 13, 2019. Location data captured with the image indicate the picture was taken near the 4700 block of North 35th Street in Milwaukee, Wisconsin. The picture was taken approximately 2.6 miles from Benson's residence.

23. On January 24, 2020, Benson was interviewed by law enforcement under a federal proffer agreement. During the interview, Benson identified Edward Beard as Subject #1 in the Prime Financial Credit Union robbery. Benson has known Beard since childhood and knew him to be a bank robber. Benson often refers to Beard as "Man". Benson regularly spent time with Beard and knew him to frequently carry an all-black possibly 9mm handgun, which Benson identified as consistent with the handgun in Subject #1's right hand during the robbery. Benson reported that he had Beard listed under "Ma" in his contacts. Cellular telephone number 414-999-8490 is listed as "Ma" in the contact list of Benson's cellular telephone. During law enforcement surveillance efforts, law enforcement officers observed Benson with Beard on multiple occasions.

24. During the interview with Benson on January 24, 2020, Benson provided the following information regarding the September 13, 2019 robbery of the Credit Union:

    a. Benson drove in the area of the Credit Union with Beard earlier that morning. The two traveled in a white Mercedes Benz (hereinafter "Mercedes") registered to

Benson's girlfriend, Virginia Jones. They conducted a surveillance route of the bank while following a gold-colored sedan, which Benson later identified as the Malibu in the aforementioned bus footage. The vehicles stopped on two occasions along the route. Albert Conley (DOB XX/XX/1967), an associate of Beard, was driving the gold sedan and spoke with Beard at each stop. During the drive, Beard pointed out to Benson an unoccupied, parked blue car, which Benson later identified as the Prius in the aforementioned bus footage.

b.  Benson and Beard drove back to Benson's residence. Beard asked to borrow the Trailblazer. Benson understood Beard would be using the vehicle as a secondary getaway car. Beard left in the Trailblazer. Benson drove to the area of the Credit Union a short time later in the Mercedes via 27th Street and parked near West Kinnickinnic River Parkway and South 22nd Street when he saw the Trailblazer.

c.  The Trailblazer was parked, with no rear registration plate, in line with the Malibu and Prius on West Kinnickinnic River Parkway, approximately half a mile from the Credit Union. Beard, Conley, and an unidentified individual were standing near the vehicles. Beard was wearing clothing consistent with Subject #1 and entered the driver seat of the Trailblazer. Albert Conley, dressed in a flannel shirt and khakis, entered the passenger seat of the Trailblazer. The unidentified individual was wearing a sweater and donned a jacket consistent with the jacket worn by Subject #2, and entered the rear passenger area of the Trailblazer.

d.  The Trailblazer drove away in the direction of the Credit Union and returned approximately five to six minutes later. The Trailblazer made a U-turn and again parked in line with the Malibu and Prius. The three occupants of the vehicle exited

8

with two white bags. The rear registration plate was replaced on the Trailblazer and all three men drove away in the three cars north on South 20th Street.

e. After the three vehicles left, Benson left in the Mercedes via South 27th Street and returned to his residence. Jones then took the Mercedes to have a leasing document notarized, while Benson remained at the residence.

f. Benson reported that a couple days after the robbery, Beard gave him $1,000 for using Benson's Trailblazer.

25. Investigators obtained recorded jail calls for Jeffrey Benson from the Robert A. Deyton Detention Facility in Lovejoy, Georgia where Benson was detained following his arrest on December 4, 2019 in Conyers, Georgia. Benson's girlfriend, Virginia Jones, telephone number 770-733-4036, provided "Man's" telephone number to Benson as **414-766-8782**. Benson called the telephone number **414-766-8782** four times while held at the Robert A. Deyton Detention Facility in Lovejoy, Georgia. Discussions between Benson and the person using **414-766-8782** were consistent with the person being Edward Beard.

26. Analysis of toll records for Albert Conley, telephone number 816-605-0619, and Jeffrey Benson, telephone number 414-856-6621, show that both numbers had contact with telephone number **414-766-8782** multiple times on September 13, 2019, which is the same day as the armed bank robbery at Prime Financial Credit Union. During his debrief, Benson reported that he had telephone contact with Beard the morning of the robbery, in advance of them driving around the bank to case it earlier that morning. Benson's phone records are consistent with this contact with telephone number **414-766-8782**.

27. I submit that there is probable cause to believe that the records identified in Attachment B, which correspond to telephone number **414-766-8782**, are likely to constitute

evidence of the above-described armed bank robbery on September 13, 2019. According to law enforcement databases, T-Mobile was the Provider for this telephone number during the time period at issue.

28. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

29. Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as

10

name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users.

## AUTHORIZATION REQUEST

31.	Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32.	I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **414-766-8782**, ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, in Parsippany, New Jersey, 07054.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time periods from September 1, 2019 through September 30, 2019:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

       viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

       i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

       ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 2113(a) and (d), 924(c), and (2), during the period from September 1, 2019 through September 30, 2019.

14
Case 2:20-mj-00894-NJ   Filed 02/21/20   Page 15 of 15   Document 1